In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 18-2983

JACK W. COOPER,

*Plaintiff,*

*v.*

RETRIEVAL-MASTERS CREDITORS BUREAU, INC.,

*Defendant-Appellee,*

APPEAL OF:
CELETHA C. CHATMAN, MICHAEL J. WOOD, and
COMMUNITY LAWYERS GROUP, LTD.,

*Appellants.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-00773 — **Manish S. Shah**, *Judge.*

———————————

ARGUED JANUARY 19, 2022 — DECIDED JULY 29, 2022

———————————

Before WOOD, HAMILTON, and JACKSON-AKIWUMI, *Circuit Judges.*

HAMILTON, *Circuit Judge.* This appeal challenges sanctions imposed under Federal Rule of Civil Procedure 11 and 28

U.S.C. § 1927. It is related to our decision today in No. 18-2358, an appeal in a separate civil action between the same parties, *Cooper v. Retrieval-Masters Creditors Bureau, Inc.* (*Cooper I*). In *Cooper I*, plaintiff Jack Cooper sued defendant Retrieval-Masters Creditors Bureau (RMCB) for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. While that case was pending, Cooper filed this separate lawsuit against RMCB asserting an additional violation of the FDCPA arising from the same debt that was the subject of *Cooper I*.

The district court dismissed this *Cooper II* case with prejudice on the theory that the new claims were improperly split from *Cooper I. Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, No. 17-cv-773, 2017 WL 11350966 (N.D. Ill. Oct. 10, 2017). Pursuant to Rule 11 and 28 U.S.C. § 1927, the district court also sanctioned Cooper's counsel, Celetha Chatman and Michael Wood, and their firm, the Community Lawyers Group, Ltd., for filing a misleading complaint and engaging in a pattern of improper litigation practices. *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, No. 17-cv-773, 2018 WL 8898621 (N.D. Ill. Aug. 14, 2018). Cooper's counsel have appealed the district court's sanctions order. We reverse.

I.   *Facts and Procedural Background*

     A.  *The Case on the Merits*

In March 2016, plaintiff Jack Cooper sued RMCB after he received a letter from RMCB in February 2016 seeking to collect a consumer debt. Cooper alleged that the letter violated the FDCPA by falsely threatening to report his debt to credit bureaus. See 15 U.S.C. § 1692e(5) & (10). While that matter was pending, Cooper filed this separate action against RMCB in January 2017 claiming additional violations of the FDCPA

arising from the same debt. The complaint in *Cooper II* alleged that, after *Cooper I* was filed and while it was pending, RMCB had misrepresented the amount of his debt and attempted to collect a fee that was not authorized by law or any agreement in violation of § 1692e(2)(a) & (10) and § 1692f(1). Cooper's complaint asserted that he visited RMCB's website in December 2016 and that the website included a notice that individuals who made payments by credit card or online had to pay a $4.95 "convenience fee."

RMCB moved to dismiss the *Cooper II* complaint, arguing both that it was improper claim splitting and that Cooper lacked standing to sue. The court granted RMCB's motion, reasoning that Cooper had improperly split his claims against RMCB over its misleading debt collection activities and there was "no good reason" to allow Cooper to continue with the second suit arising from the same dispute in *Cooper I*. *Cooper II*, 2017 WL 11350966, at *2. As a result, the court entered a judgment dismissing the action with prejudice. Cooper did not appeal that judgment.

B. *Sanctions Decision*

After winning that judgment on the merits, RMCB moved for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, and for a fee award under 15 U.S.C. § 1692k(a)(3). RMCB contended that it was entitled to the fees and costs of defending against *Cooper II* because the suit involved unreasonable claim splitting and was based on false allegations. The court granted RMCB's motion in part and sanctioned Celetha Chatman, Michael Wood, and their firm, the Community Lawyers Group, Ltd., holding them jointly and severally liable. *Cooper II*, 2018 WL 8898621, at *1. The court (Judge Shah) ordered the sanctioned attorneys to pay

$7,888.13, which was the sum of the attorney fees and costs awarded to Cooper and these same attorneys by Judge Feinerman in *Cooper I*. *Id.* at *3.

Judge Shah gave three reasons for his decision to impose sanctions in *Cooper II*. First, he said that attorneys Chatman and Wood included misleading allegations in the complaint. Second, he found that Chatman and Wood engaged in a regular practice of claim splitting. As evidence, the court cited not only the claim splitting between *Cooper I* and *Cooper II* but also several other lawsuits Chatman and Wood had filed on behalf of other plaintiffs that the court determined involved claim splitting. Third, the court found that Chatman and Wood consistently failed to follow the Northern District of Illinois's procedures for identifying related cases.

## II.  *Appellate Jurisdiction*

Before reaching the merits of this appeal, we must first address our appellate jurisdiction. Under Federal Rule of Appellate Procedure 3(a)(1), a party may appeal a district court's decision as of right "only by filing a notice of appeal." The notice of appeal must "specify the party or parties taking the appeal by naming each one in the caption or body of the notice." Fed. R. App. P. 3(c)(1)(A). Rule 3's requirements for the contents of a notice of appeal are jurisdictional and must be satisfied before an appeals court can review a case. *Smith v. Barry*, 502 U.S. 244, 248 (1992). At the same time, however, courts do not dismiss an appeal because of "imperfections" in the notice of appeal "where no genuine doubt exists about who is appealing, from what judgment, to which appellate court." *Becker v. Montgomery*, 532 U.S. 757, 767 (2001). In other words, we will not dismiss an appeal "for failure to name a

party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(7).

On its face, the notice of appeal here leaves a lot to be desired. Cooper's counsel, Chatman and Wood and their firm, assert that they are the parties appealing, but none are named in the caption or body of the notice of appeal. Because of this deficiency, RMCB argues, we do not have jurisdiction over this appeal.

In *Foreman v. Wadsworth*, 844 F.3d 620 (7th Cir. 2016), we considered whether the failure to name the plaintiff's counsel in the notice of appeal precluded our jurisdiction over the counsel's own challenges to the district court's decision, which had censured him. *Id.* at 625. The counsel in *Foreman* was not named in either the caption or body of the notice of appeal, but the body said in part that it presented an appeal of the district court's order censuring the plaintiff's counsel. *Id.* at 625–26. We exercised jurisdiction over the counsel's appeal because he was the only party who had an interest in the censure order. *Id.* at 626. As a result, his intent to appeal was sufficiently "otherwise clear from the notice," so that the failure to include his name was harmless. *Id.*, quoting what is now Fed. R. App. P. 3(c)(7).

As in *Foreman*, the caption and body of the notice of appeal do not mention the attorneys or their firm. The caption refers to plaintiff Jack Cooper "on behalf of himself [a]nd all others similarly situated." Also, the body of the notice says that "plaintiff Jack Cooper, appeals" the district court's judgment granting RMCB's motion for relief under Rule 11 and § 1927. Chatman, Wood, and their firm are not mentioned in the caption or the body of the notice of appeal.

Despite these deficiencies, we conclude under *Foreman* and Rule 3(c)(7) that we have jurisdiction to review the district court's sanctions order. The sanctions order applied to Chatman, Wood, and their law firm, the Community Lawyers Group, Ltd., but not to plaintiff Cooper. No one other than the attorneys and their firm has an interest in that order. Even though their names are not included in the caption or body of the notice of appeal, their intentions to appeal are otherwise evident from the notice.

There is a further complication regarding attorney Wood. He did not file or sign the notice of appeal. See *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 564 (7th Cir. 2008) (declining to exercise jurisdiction over the plaintiff's counsel's apparent challenge to the sanctions order against him where he was not named in the notice of appeal and did not take part in filing the notice or the appeal itself); cf. *Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC*, 339 F.3d 1146, 1149 (9th Cir. 2003) (retaining jurisdiction over plaintiff's counsel's appeal of the sanctions order against him in part because his name appeared in the notice as the counsel for the plaintiff and he signed and filed the notice of appeal).

Although Wood did not file or sign this notice of appeal, the joint and several liability imposed by the district court's order resolves this complication. In tort law, when an injury results from the actions of several parties, "the entire liability attaches jointly and severally, each tortfeasor being responsible for the whole amount … with a corresponding right to sue the other tortfeasors for contribution." *Stifle v. Marathon Petroleum Co.*, 876 F.2d 552, 556 (7th Cir. 1989); see also *Schadel v. Iowa Interstate Railroad*, 381 F.3d 671, 677 (7th Cir. 2004). Applied here, if we were to limit our jurisdiction to Chatman,

who filed and signed the appeal on behalf of Cooper, and who identified herself as an attorney with Community Lawyers Group, the appeal might have little point. For example, if we reversed the sanctions order as to only Chatman and the firm, under a theory of contribution Wood would still be entitled to sue Chatman to recover a portion of the sanctions that he paid. We have jurisdiction over Wood's appeal even though he did not file or sign the notice of appeal.

To be clear, the defects in this notice of appeal are at the edge of errors we are willing to treat as harmless. Although Rule 3 discourages dismissing an appeal for technical errors, compliance with its requirements should not be difficult, even in appealing a sanctions order against counsel. Failures like this risk dismissal of the sanctions appeal for lack of jurisdiction.

III. *Merits*

We now turn to the merits of this appeal. We review for abuse of discretion a sanctions order pursuant to Rule 11 and 28 U.S.C. § 1927. *Northern Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883 (7th Cir. 2017); *4SEMO.com Inc. v. Southern Illinois Storm Shelters, Inc.*, 939 F.3d 905, 913 (7th Cir. 2019). A party may establish an abuse of discretion "if the district court based its decision on an erroneous view of the law or a clearly erroneous evaluation of evidence." *Northern Illinois Telecom, Inc.*, 850 F.3d at 883. Although we give deference to the district court's decision, our review is not an "automatic affirmance," and "'we must also find a fair relationship between the record and the district court's perception of the proceedings.'" *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 824 (7th Cir. 2001), quoting *In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988).

Sanctions pursuant to Rule 11 are appropriate when counsel's actions reflect a "callous disregard for governing law or the procedures of the court." *Allison v. Dugan*, 951 F.2d 828, 834 (7th Cir. 1992). Similarly, we have upheld sanctions under 28 U.S.C. § 1927 when counsel acted unreasonably and with a "serious and studied disregard for the orderly process of justice." *Burda v. M. Ecker Co.*, 2 F.3d 769, 777 (7th Cir. 1993), quoting *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988).

As noted, the district court here relied on three concerns to justify sanctions against the attorneys. First, it found that Cooper's complaint was misleading because there were inconsistencies between the complaint and his testimony during the *Cooper I* proceedings. *Cooper II*, 2018 WL 8898621, at *1–2. Second, the district court determined that Chatman and Wood had engaged in a regular pattern of claim splitting, as shown in both the *Cooper* cases and a series of other cases they had filed on behalf of other plaintiffs. *Id.* at *2. Third, the court noted that Chatman and Wood consistently failed to identify their related cases in accordance with the Northern District of Illinois's local rules. *Id.* We address these in turn.

A. *Misleading Complaint*

The district court determined initially that Cooper's assertions in his complaint that he visited RMCB's website in December 2016 to view payoff options were false. *Cooper II*, 2018 WL 8898621, at *2. It also found that Chatman and Wood knew the allegations in the complaint were false because *they* visited RMCB's website and they, not Cooper, had discovered the convenience fee notice. *Id.* This was a clearly erroneous reading of Cooper's deposition and trial testimony during the *Cooper I* proceedings. It does not support sanctions.

Here are the assertions and testimony that the district court referred to when reaching its conclusion that the *Cooper II* complaint was inconsistent with Cooper's prior testimony.

- Cooper's complaint alleged that "On or about December 9, 2016, Plaintiff logged into his RMCB account to view pay-off options for the alleged debt." Dkt. 1, ¶ 14.

- During Cooper's deposition, he testified that he made payments "by money order or check," and he "never paid anything online." He also explained that he did not have the ability to make any payments towards the debt. Dkt. 33-1 at 34:7–15; 70:21–24; 71:1.

- At trial, Cooper reiterated that he never paid his bills online and responded in the affirmative when asked "you never went to go check what the status of a bill was online, correct?" Dkt. 33-2 at 18:4–17.

- During the trial, RMCB's counsel also asked Cooper: "You testified earlier, sir, that you don't go on to websites to look into options for payment, correct," and Cooper responded "yes." Dkt. 33-2 at 25:23–25.

- As a follow up, RMCB's counsel asked: "And you testified earlier that you had absolutely no money to be able to pay the debt off, correct," and Cooper responded "yes." Dkt. 33-2 at 26:1–3.

- Finally, RMCB's counsel asked: "But you went to [RMCB's] website and accessed the information, correct," and Cooper responded: "Through the help of the attorneys." Dkt. 33-2 at 26:4–6.

We find two key errors in the district court's account of the facts. First, the court relied on RMCB's lawyer's paraphrase of Cooper's testimony during the *Cooper I* trial, which RMCB's lawyer in fact misstated, to find that the complaint's assertion that Cooper visited RMCB's website to view his payment options was false. *Cooper II*, 2018 WL 8898621, at *1. Cooper explained in his deposition and trial testimony that he never made payments online and he did not go online to check the status of the bill. He also mentioned that he could not make any payments toward the debt at that time. That testimony, however, did not declare that Cooper had never even looked at RMCB's website to view his payment options. Yet that is how Cooper's testimony was presented when RMCB's counsel asked: "You testified earlier, sir, that you don't go on to websites to look into options for payment, correct?" Dkt. 33-2 at 25:23–24. That paraphrase by RMCB's counsel is what created the impression of inconsistency with Cooper's complaint.

That misstatement also led to the second error in the district court's interpretation of the evidence. According to the district court, attorneys Chatman and Wood knew that the assertions in Cooper's complaint were false because when he was asked at trial whether he visited RMCB's website, Cooper said "Through the help of the attorneys." Dkt. 33-2 at 26:6. The court interpreted this response to mean that Chatman and Wood, not Cooper, had visited RMCB's website. *Cooper II*,

2018 WL 8898621, at *2. Thus, the court concluded, Chatman and Wood misled the court when they wrote otherwise in the *Cooper II* complaint. *Id.*

Cooper's response was not a clear assertion that he was not involved in the process of accessing RMCB's website or finding the convenience fee requirement. Chatman and Wood could have offered "help" in a variety of ways, from directing Cooper which buttons to click once he was on the website to informing him that even if he could not make a payment at that time, he could still view his options online. The district court instead construed "help" to mean that Chatman and Wood went on the website by themselves, without Cooper, and noticed the convenience fee requirement. In deeming the complaint misleading, the district court read too much into the testimony and the complaint.

Although the district court expressed concern about the allegations in Cooper's complaint that it thought were misleading, it did not think they alone justified sanctions. *Cooper II*, 2018 WL 8898621, at *2. Instead, what "crossed the line" was the claim splitting in *Cooper II* and Chatman and Wood's general practice of claim splitting reflected in other cases. *Id.* We turn to that issue next.

B. *Claim Splitting*

    1. *Claim Splitting in Cooper II*

Claim splitting draws on and is a subset of the doctrine of res judicata. *Scholz v. United States*, 18 F.4th 941, 951 (7th Cir. 2021). Res judicata prevents parties from relitigating claims that were or could have been raised in a prior action for which there is now a final judgment on the merits. *Barr v. Board of Trustees of Western Illinois Univ.*, 796 F.3d 837, 839 (7th Cir.

2015). In particular, res judicata blocks a subsequent lawsuit "if there is (1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action." *Id.* at 840. The elements of claim splitting are similar, except that a final judgment on the merits in the first action is not required. *Scholz*, 18 F.4th at 952. Instead, the question is "whether the first suit, assuming it were final, would preclude the second suit." *Roumann Consulting Inc. v. Symbiont Construction, Inc.*, No. 18-c-1551, 2019 WL 3501527, at *6 (E.D. Wis. Aug. 1, 2019), quoting *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011). We have recognized one important practical difference between res judicata and claim splitting: claim splitting allows a trial court to exercise discretion, while res judicata does not. *Scholz*, 18 F.4th at 952.

The district court dismissed the *Cooper II* complaint with prejudice for claim splitting. The court explained that *Cooper II* was "about the same defendant attempting to collect the same debt from the same plaintiff through a communication that was set into motion by the same communication challenged in the first lawsuit." *Cooper II*, 2017 WL 11350966, at *2. Because Cooper's claims involved the same transaction, the court determined that they should have been resolved together in one action. *Id.* Cooper did not appeal the court's judgment dismissing *Cooper II*, so the merits are not before us. But we must consider the merits of that finding to the extent that the court relied on it to sanction Chatman and Wood.

Like most rules in the law, the general rule of res judicata has limits and exceptions. One limit is that res judicata does not apply to claims that accrued after the prior suit was filed. *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008). There is also an exception for claims that were expressly reserved by the

prior court for later adjudication. *Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 629 (7th Cir. 2002); see also *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 896 (7th Cir. 2015). We do not have an express reservation here by the first district court, so we focus on the limit for claims that accrued after the first action was filed.

Claims arising from continuous violations of rights or new discrete harms that occurred after the prior suit was filed are exempt from res judicata's bar. *Smith*, 513 F.3d at 783. We have noted that "plaintiffs need not amend filings to include issues that arise after the original suit is lodged." *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 915 (7th Cir. 1993). In the same vein, we have affirmed district court denials of a plaintiff's motion to amend or supplement a complaint to add new claims because those claims, which arose from a different act and time than the first suit, could be raised in a subsequent lawsuit. E.g., *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1429 (7th Cir. 1993).

This treatment of newly accrued claims is an important limit on res judicata. But it can be difficult for parties or their lawyers to know whether it will apply until they file a second lawsuit. For example, here, Cooper says he noticed RMCB's convenience fee requirement when he visited the RMCB website almost nine months after he filed his complaint in *Cooper I*. Dkt. 1, ¶ 14. The record does not show whether the convenience fee notice was on RMCB's website before or on March 3, 2016, when Cooper filed *Cooper I*. If the notice was not on RMCB's website at the time, then Cooper likely could not have learned about it before he filed *Cooper I* and the exception for newly accrued claims would apply. Cooper had two

options for pursuing his new claim based on RMCB's conven-
ience fee: (1) move to supplement or amend *Cooper I*, or (2) file
a new lawsuit, which we have advised parties they may do
for newly accrued claims. *Doe*, 985 F.2d at 915. But there are
risks in relying on *Doe* and filing a new action. Recall that
claim splitting calls for an exercise of discretion in the trial
court. A court could allow the second suit or could determine
that the exception does not apply and that the second suit
should be barred. It's also possible that a district court might
base its exercise of discretion on a legal error. As discussed in
the next section, an intervening decision by this court shows
that that occurred here.

The district court assumed that Cooper could have discov-
ered the convenience fee requirement on RMCB's website be-
fore he filed his complaint in *Cooper I*. *Cooper II*, 2017 WL
11350966, at *2. As a result, it concluded, the limits for contin-
uing violations and newly accrued claims did not save the
new case from res judicata. *Cooper II*, 2018 WL 8898621, at *2
n.4. The court also suggested that Cooper could have avoided
the consequences of claim splitting and res judicata by filing
a motion to amend his complaint in *Cooper I*. *Id.* at *1.

The district court's alternative may not have fully appreci-
ated the potential effects of a denied motion to amend or sup-
plement, which we discussed in *Arrigo v. Link*, 836 F.3d 787
(7th Cir. 2016). In *Arrigo*, the district court denied the plain-
tiff's motion to amend her complaint to add related claims be-
cause her request was untimely. On appeal, we upheld that
decision. *Id.* at 798. Following that denial, but before a final
judgment was entered in the first lawsuit, the plaintiff had
filed a new action asserting the excluded claims. The district
court had also dismissed the new action. *Id.* at 799–800.

Although the court acknowledged that there was not yet a final judgment in the first suit, it reasoned that it would be a waste of judicial resources to wait for a final judgment to dismiss the second suit, which was likely precluded by the first. *Id.* at 799. Assuming that the plaintiff's second suit was precluded, we agreed with the district court's position. *Id.* at 799–800. We reasoned that allowing the plaintiff to continue with her second suit would also result in the same prejudice and inefficiency that justified the denial of her motion to amend, so that dismissal was proper. *Id.* at 800.

Whichever path Cooper chose here—move to supplement in *Cooper I* or file a new lawsuit—he faced uncertainty about how res judicata might be applied. In the face of that uncertainty, his counsel chose to file the new lawsuit, *Cooper II*. It may well be that the better option would have been for Cooper to take his chances with a motion to supplement or amend. But Chatman and Wood's choice not to pursue that course is not the sort of "callous disregard for governing law or the procedures of the court," *Allison*, 951 F.2d at 834, or "serious and studied disregard for the orderly process of justice," *Burda*, 2 F.3d at 777 (citation omitted), that could justify sanctions under Rule 11 or § 1927. Chatman and Wood took a chance, hoping that the district court would apply the limits for newly accrued claims. They were unsuccessful, but the punishment of *Cooper II* being dismissed with prejudice was sufficient. Sanctioning them for choosing one of two unpredictable paths goes beyond what is necessary to ensure respect for judicial procedures and the law.

We recognize that the FDCPA is structured to incentivize claim splitting, and that district judges need to keep an eye out for that prospect. The Act caps statutory damages for

plaintiffs to $1,000 *per action*. 15 U.S.C. § 1692k(a)(2)(A). That per-action limit provides an incentive for debtors to file multiple suits to maximize their total recovery even if the claims arise from violations by the same debt collector. But additional costs of that approach may cut into the ultimate award. The $400 civil filing fee required for each action may deter some debtors from filing such duplicative litigation.

### 2. *General Pattern and Practice of Claim Splitting*

In addition to its view of claim splitting in *Cooper II*, the district court cited several cases that Chatman and Wood filed on behalf of other plaintiffs that the court determined reflected a pattern of claim splitting. *Cooper II*, 2018 WL 8898621, at *2. The district court's reliance on those cases as evidence of claim splitting was erroneous in light of an intervening decision by this court—in one of the cited cases—on res judicata and claim splitting under the FDCPA.

In *Horia v. Nationwide Credit & Collection, Inc.*, 944 F.3d 970 (7th Cir. 2019), we considered whether the plaintiff's second suit was precluded by the judgment in a prior suit, against the same defendant for a similar violation of the FDCPA. We held that the second suit was not barred. *Id.* at 974. Under the FDCPA, we explained: "Discrete and independently wrongful acts produce different claims, even if the same wrongdoer commits both offenses and the second wrong is similar to the first." *Id.* The parties and statutory violations were the same in the two *Horia* cases, but the debts were different and owed to different creditors. The defendant's failure to comply with the FDCPA thus caused a separate injury associated with each debt, and the second suit was not precluded by the first. We recognized in *Horia* the Act's incentive for filing multiple actions: "A statutory cap per case, rather than per bill collector,

induces debtors to file more cases. Judges aren't authorized to turn per-case caps into per-defendant caps; that choice is legislative." *Id.*

Relying on a similar analysis here, we note that the cases the district court cited did not involve improper claim splitting. See *Cooper II*, 2018 WL 8898621, at *2. Each set of cases, filed by the same plaintiff against the same defendant, was based on different debts and in some cases those debts were even owed to different creditors. See, e.g., *Carchi v. Midland Funding, LLC*, 17-cv-04897 (N.D. Ill.) (filed June 30, 2017) (debt owed to Citibank); *Carchi v. Midland Funding, LLC*, 17-cv-05446 (N.D. Ill.) (filed July 25, 2017) (debt owed to Synchrony Bank).[1] The district court's reliance on those cases to find that Chatman and Wood had engaged in a pattern of claim splitting was based on a mistaken view of the law, at least in light

---

[1] The other cases the district court cited also did not involve improper claim splitting. See, e.g., *Carchi v. Portfolio Recovery Associates, LLC*, 17-cv-05900 (N.D. Ill.) (filed Aug. 11, 2017) (debt owed to Citibank for consumer account starting with 60353); *Carchi v. Portfolio Recovery Associates, LLC*, 17-cv-06867 (N.D. Ill.) (filed Sept. 22, 2017) (debt owed to Citibank for consumer account starting with 54241); *Carchi v. Portfolio Recovery Associates, LLC*, 17-cv-07607 (N.D. Ill.) (filed Oct. 20, 2017) (debt owed to World Financial Network Bank for consumer credit account); *Carchi v. Portfolio Recovery Associates, LLC*, 18-cv-00098 (N.D. Ill.) (filed Jan. 5, 2018) (debt owed to Citibank for consumer account starting with 51210); *Carchi v. Portfolio Recovery Associates, LLC*, 18-cv-02067 (N.D. Ill.) (filed Mar. 21, 2018) (debt owed to Citibank for consumer account starting with 60353); *Horia v. Nationwide Credit & Collection, Inc.*, 17-cv-06103 (N.D. Ill.) (filed Aug. 22, 2017); *Horia v. Nationwide Credit & Collection, Inc.*, 17-cv-08355 (filed Nov. 17, 2017). In fact, after the district court published its opinion here, we determined that the separate actions for *Horia v. Nationwide Credit & Collection, Inc.* did not constitute improper claim splitting. 944 F.3d at 974.

of our intervening decision in *Horia*. The claim splitting ground does not support sanctions here.

C.  *Failure to Identify Related Cases*

The district court's final justification for its sanctions order was that Chatman and Wood consistently failed to follow Northern District of Illinois procedures requiring parties to identify related cases. In particular, the Civil Cover Sheet that a party files with a complaint includes a section for "related case(s) if any." N.D. Ill. Civil Court Sheet Section 9. The instructions explain that if there are any related cases pending in the court, the party should insert the docket number and the corresponding judge for the case. *Id.*

While these procedures are helpful for judicial economy and organization, Chatman and Wood's apparent failure to comply does not, by itself, justify monetary sanctions. Either party can designate a case as related. Sanctioning one party for failing to do so when there are opportunities for the other party to correct that failure would not be justified, at least absent aggravating circumstances not shown here.

The district court's stated grounds for imposing monetary sanctions against counsel in this case do not support the sanctions. The sanction award is REVERSED.