In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2141

ARLIN-GOLF, LLC, RONALD POPP, and
VICTOR VALENTI,

*Plaintiffs-Appellants,*

*v.*

THE VILLAGE OF ARLINGTON HEIGHTS,
ARLENE J. MULDER, WILLIAM V. ENRIGHT,
BRIAN PROPERTIES, INC., JACK B. WHISLER,
VILLAGE BANK & TRUST, and S. MICHAEL POLANSKI,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 1907—**David H. Coar**, *Judge.*

ARGUED NOVEMBER 2, 2010—DECIDED JANUARY 21, 2011

Before CUDAHY, FLAUM, and KANNE, *Circuit Judges.*

FLAUM, *Circuit Judge.* Arlin-Golf, LLC, ("Arlin-Golf")
sued The Village of Arlington Heights ("the Village") in
Illinois state court in 2006. The two entered a settlement

agreement in 2008 pursuant to which Arlin-Golf volun-
tarily dismissed the case with prejudice. In 2009, the
plaintiffs in this case sued the defendants in this case
based on facts and legal theories similar to those
asserted in the 2006 state suit. Accordingly, the district
court dismissed the federal suit based on res judicata,
among other grounds. We affirm.

## I. Background

The plaintiffs-appellants, Arlin-Golf and Arlin-Golf's
two partners, Ronald Popp and Victor Valenti, purchased
the Arlin-Golf Shopping Center ("the Center") in June
2001. On January 22, 2002, the Village announced a Tax
Increment Financing ("TIF") District that included the
property on which the Center was built. The Village
implemented the TIF District in a July 2002 ordinance, in
which the Village announced that the Center would be
condemned, knocked down, and redeveloped in roughly
six months. But the Village never executed this plan.
Instead, from 2002 to 2008, the Village allegedly encour-
aged tenants to move out from the Center or break
their lease agreements with Arlin-Golf, discouraged
prospective tenants from renting space, repeatedly an-
nounced that the Center was condemned and would be
knocked down in a few months, and asserted that the
Village already owned the Center, when in fact it did not.
Due to the actions of the Village and its agents, the plain-
tiffs allege that they have been unable to use or profit
from the Center since 2002.

In 2006, Arlin-Golf filed a lawsuit against the Village in Illinois state court, alleging that the Village's implementation of the TIF District was improper under Illinois statutory law, and that the Village's conduct constituted a constructive taking under Illinois's constitution.

In 2008, the plaintiffs contacted Brian Properties, Inc., a real estate brokerage, to help them sell the Center. The plaintiffs allege that Brian Properties, Jack Whisler, a broker and owner of Brian Properties, the Village, Arlene Mulder, the Village's mayor, William Enright, the Village's Deputy Director of Planning and Community Development, Village Bank & Trust of Arlington Heights ("the Bank"), which lent money to the plaintiffs, and S. Michael Polanski, the Bank's Chairman and CEO, worked together to coerce the plaintiffs into selling the Center to the Village. The plaintiffs claim that they were threatened physically and financially—they allege that they were threatened with the foreclosure of loans they had outstanding with the Bank that were unrelated to their mortgage on the Center and that were not in default.

The plaintiffs eventually accepted a settlement offer from the Village pursuant to which the Village would purchase the Center for $1.6 million and Arlin-Golf would agree to withdraw the state suit with prejudice. On September 18, 2008, Arlin-Golf voluntarily dismissed the state suit with prejudice. On November 3, 2008, Arlin-Golf and the Village executed a real estate contract that provided for the sale of the Center to the Village for $1.6 million. The sale closed on March 4, 2009. The plain-

tiffs claim to have lost millions from their investment in the Center, which they attribute to the Village's and its agents' conduct.

On March 27, 2009, the plaintiffs in this case sued the defendants in this case, alleging that the defendants' conduct resulted in financial losses to Arlin-Golf in connection with its ownership of the Center. In a ten-count complaint, the plaintiffs allege violations of the Equal Protection Clause (Count I), the Due Process Clause (Count II), and the Takings Clause (Count III), claims under the parallel provisions of the Illinois Constitution (Counts I-III), a § 1983 conspiracy (Count IV), a § 1983 claim against several defendants for violations of well-known rights (Count V), and supplemental state law claims for interference with contract relations (Count VI), interference with economic expectancy (Count VII), civil conspiracy (Count VIII), breach of fiduciary duty (Count IX), and inducement of breach of fiduciary duty (Count X).

On June 10, 2009, the defendants filed a motion to dismiss under Rule 12(b)(6) based on res judicata arising from the settlement of the state action, among other grounds. On March 9, 2010, the district court granted the motion to dismiss based on res judicata, among other grounds on particular counts and for particular defendants. It dismissed Counts I through V and X with prejudice, and VI through IX with prejudice to the Village and without prejudice to the other defendants. On April 6, 2010, the plaintiffs moved to vacate the judgment and to amend their pleadings. The district court denied the plaintiffs' motion on April 7, 2010. This appeal followed, challenging solely the application of res judicata.

## II. Analysis

The appellants primarily assert four arguments on appeal. First, they argue that the causes of action in the state and federal suits were not identical, and, thus, that the second element for applying res judicata is not satisfied. Second, they argue that applying res judicata would be unfair under the circumstances of this case. Third, they argue that the settlement agreement should not be enforced because of the circumstances under which it was procured. Finally, they argue that the district court erred by dismissing their case with prejudice and, thus, without leave to amend their complaint. We review de novo the district court's decision to grant the defendants' motion to dismiss. *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995).

To determine whether res judicata applies, we apply the preclusion law of Illinois, the state that rendered the judgment. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007); *see also* 28 U.S.C. § 1738. The Supreme Court of Illinois explained Illinois's doctrine of res judicata:

> The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. When *res judicata* is established as a bar against the prosecution of a second action between the same parties upon the same claim or demand it is conclusive not only as to every matter which *was* offered to sustain or defeat

the claim or demand, but as to any other matter which *might* have been offered for that purpose.

*Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001); *see also Licari v. City of Chi.*, 298 F.3d 664, 666 (7th Cir. 2002). Res judicata applies when "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Nowak*, 757 N.E.2d at 477; *see also Licari*, 298 F.3d at 666.

To determine whether the second requirement is met, Illinois employs a transactional test:

> [S]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief. . . . [T]he transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction.

*River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998); *see also Licari*, 298 F.3d at 667. Illinois courts apply the transactional test "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Altair Corp. v. Grand Premier Trust & Inv., Inc.*, 742 N.E.2d 351, 355 (Ill. App. Ct. 2000) (internal quotation marks and citations omitted).

Accordingly, the addition of new theories of relief in a subsequent suit arising from the same operative facts satisfies the second requirement for applying res judicata. *See River Park, Inc.*, 703 N.E.2d at 893-96.

The second requirement for applying res judicata is satisfied because the plaintiffs' complaints in the state and federal suits rely on the same operative facts. In both complaints, the operative facts regard the Village's implementation of the TIF District, and the economic harm that Arlin-Golf and its principals experienced due to the Village's and its agents' conduct that interfered with Arlin-Golf's ability to profit from the Center. The state-court complaint included a claim for constructive taking under a provision in Illinois's constitution that prohibits taking or damaging private property "for public use without just compensation," Ill. Const. art. I, § 15, which was based on an assertion that the Village's and its agents' conduct discouraged tenants from leasing the property and economically harmed Arlin-Golf. The federal-court complaint seeks recovery based on additional theories not mentioned in the state-court complaint, but res judicata is nonetheless appropriate because, as explained above, both complaints rely on the same operative facts. Further, Illinois courts consider the facts "as they exist at the time of judgment [to] determine whether *res judicata* bars a subsequent action." *Altair Corp.*, 742 N.E.2d at 355. The state suit was dismissed on September 18, 2008, and the federal suit was filed on March 27, 2009. The plaintiffs do not allege that any significant additional facts occurred between those two dates, of course other than the execution

of the agreement to sell the Center. But the plaintiffs' complaint relies on the defendants' actions that resulted in the agreement, not the execution of the agreement itself. The second requirement for applying res judicata is satisfied.

Next, the plaintiffs argue that applying res judicata would be unfair under the circumstances of this case. But they cited no relevant legal authority to the district court to support the proposition that the district court should not have applied res judicata due to the alleged unfairness in this case, and they cite no such authority on appeal. Thus, the argument is waived. *See Weems v. Potter*, 68 Fed.Appx. 734, 736 (7th Cir. 2003) (failure to cite relevant legal authority on appeal waives the argument); *Rickard v. Sternes*, 44 Fed.Appx. 738, 739-40 (7th Cir. 2002) (failure to adequately raise an argument before the district court waives the argument on appeal).

Third, the plaintiffs argue that the settlement agreement should not be enforced because of the alleged circumstances under which it was procured. Again, however, they cited no authority to the district court indicating that the settlement agreement is void under Illinois law, which would negate the finality requirement for applying res judicata. Instead, the case law they cited below and on appeal demonstrates that the agreement is merely voidable, not void. *See, e.g.*, *Laemmar v. J. Walter Thompson Co.*, 435 F.2d 680, 682 (7th Cir. 1970). Accordingly, any argument that the settlement agreement was improperly procured is either unhelpful to the plaintiffs' case or waived. *See Weems*, 68 Fed.Appx. at 736; *Rickard*, 44 Fed.Appx. at 739-40.

Fourth, the district court did not commit reversible error by dismissing the plaintiffs' complaint without prejudice and, thus, without leave to amend. The general rule is to freely permit plaintiffs to amend their complaint "once as a matter of course." FED. R. CIV. P. 15(a); *see Foster v. DeLuca*, 545 F.3d 582, 583-84 (7th Cir. 2008). But "'the right to amend as a matter of course is not absolute,' and a district court may deny a motion to amend 'if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.'" *Foster*, 545 F.3d at 584 (quoting *Crestview Vill. Apartments v. U.S. Dep't of Housing & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004)); *see also Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) ("Reasons for finding that leave should not be granted include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" (emphasis removed) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). After reviewing the record below and the allegations on appeal, we have no reason to believe that an amendment would not be futile in this case. Further, the plaintiffs did not attach a proposed amended complaint to their motion for reconsideration, which "may indicate a lack of diligence and good faith." *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1139 (7th Cir. 1986). Notably, to the extent that the district court's order constituted error due to its brevity, that error was harmless. *See* FED. R. CIV. P. 61.

The plaintiffs also mention that we do not afford full faith a credit to a judgment when a party was denied a full and fair opportunity to litigate. *See, e.g.*, *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 480-85 (1982); *Hicks*, 479 F.3d at 471. Again, the plaintiffs fail to point out any relevant authority on appeal indicating that the circumstances surrounding the settlement agreement in this case denied them a full and fair opportunity to litigate their claims, and we find none. Accordingly, any argument that this exception applies is meritless or waived.

Finally, the plaintiffs state without explanation that the defendants are improperly using res judicata as a sword and not a shield. *See Fed. Signal Corp. v. SLC Techs., Inc.*, 743 N.E.2d 1066, 1077-78 (Ill. App. Ct. 2001). To the contrary, however, the defendants are using res judicata to shield them from repetitive litigation, not as a sword.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.