In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2063

LISA J. BARR,

*Plaintiff-Appellant,*

*v.*

BOARD OF TRUSTEES OF
WESTERN ILLINOIS UNIVERSITY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 10-cv-1199 — **Michael M. Mihm**, *Judge.*

ARGUED SEPTEMBER 29, 2014 — DECIDED AUGUST 12, 2015

Before EASTERBROOK, WILLIAMS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Lisa Barr was a tenure-track journalism professor at Western Illinois University from the fall of 2007 through the spring semester 2010, when the University declined to retain her for the next academic year. Barr contends that the nonrenewal decision was in retaliation for complaints she made in 2008 about racial discrimination at the school. In March 2010 she sued the University alleging

retaliation in violation of Title VII. Service of this suit was never perfected, however.

A few months later, in June 2010, Barr filed a second lawsuit—this time against the University's Board of Trustees—alleging that the decision not to renew her contract was both retaliatory and the product of age discrimination. In the meantime, a magistrate judge recommended that the district court dismiss Barr's first suit for failure to prosecute. And so it was dismissed, with prejudice, in August 2010.

During discovery in the second case, the Board of Trustees learned of Barr's prior lawsuit. The Board promptly amended its answer to raise res judicata as an affirmative defense. A motion for judgment on the pleadings soon followed. Barr responded that her first suit didn't end in a judgment on the merits and the claims differed in the two cases. The district court rejected these arguments, granted the Board's motion, and dismissed the case on res judicata grounds.

We affirm. A dismissal for failure to prosecute "operates as an adjudication on the merits," FED. R. CIV. P. 41(b), and Barr's two suits involved the same parties and core of operative facts. Res judicata was properly applied.

### I. Background

Barr joined the faculty at Western Illinois University as an assistant professor of journalism in the 2007–2008 academic year. As a tenure-track professor, she was subject to annual retention evaluations through her sixth year of teaching, at which point she could apply for tenure.

In 2008 Barr complained that the University refused to hire a professor of Nigerian descent because of his race. She contends that the University responded to this complaint by harassing her and subjecting her to unfavorable working conditions. On November 19, 2009, she lodged a retaliation complaint with the Illinois Department of Human Rights. The Equal Employment Opportunity Commission ("EEOC") declined to take action and in December 2009 issued a right-to-sue letter. That same month the University informed Barr that she would not be reappointed the following academic year.

On March 3, 2010, just before the 90-day window to sue closed, Barr filed a pro se complaint against the University alleging that it violated her rights under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* In it she claimed that the nonrenewal was in retaliation for her complaint about racial discrimination at the University.[1]

---

[1] Barr's statement of her claim was labeled "Retaliation for EEOC-protected activities" and stated that she was "[n]ot retained/allowed to advance to PY4 of tenure track process, despite having met retention criteria." She elaborated:

> I was non-renewed—not allowed to advance to PY4 of tenure track process, despite having met retention criteria. I was and remain an exemplary, high-achieving employee, whose immediate supervisor wanted retained [sic].

> Other employees have advanced much further than I through the tenure track process with far less-exemplary performance. This, I will show, was retaliation for EEOC-protected activities.

Two days later Barr filed a second charge of retaliation with the Illinois Department of Human Rights. This one alleged that the University retaliated against her based on her prior EEOC charge; she also claimed that her contract was not renewed because of sex and age discrimination. On March 30 the EEOC issued a right-to-sue notice on these claims. On June 25 Barr filed a second suit against the University's Board of Trustees alleging claims for retaliation under Title VII and age discrimination under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* In this second suit, Barr was represented by counsel.

While all this transpired, the first case languished without service on the University. Accordingly, on August 4, 2010, a magistrate judge recommended that the district court dismiss the case for failure to prosecute. The magistrate judge noted that Barr had failed to serve the University within the 120-day period specified in Rule 4(m) of the Federal Rules of Civil Procedure. Indeed, after she missed the July 1 deadline, the magistrate judge had reminded Barr of the service requirement and ordered a status report by July 27. Barr neither responded nor served the University, so the magistrate judge recommended dismissal. On August 25 the district court dismissed the first suit, with prejudice, for failure to prosecute.

As discovery proceeded in the second case, the Board of Trustees learned about the first suit and amended its answer to assert res judicata as an affirmative defense. The Board then moved for judgment on the pleadings, *see* FED. R. CIV. P. 12(c), arguing that res judicata blocked the second suit. Barr objected, pointing out that when she filed her first suit, she did not have a right-to-sue letter in hand on the claims

alleged in the second. She also argued that the elements of res judicata were not satisfied.

The district court rejected these arguments, noting that Barr easily could have amended her first complaint to include the age- and sex-discrimination claims contained in her second EEOC charge once the second right-to-sue letter arrived. The court held that res judicata applied because Barr's first suit resulted in a final judgment on the merits and the two cases involved the same parties and the same core of operative facts. The court accordingly granted the Board's motion and entered judgment dismissing the case.

## II. Discussion

We review de novo the district court's order granting judgment on the pleadings under Rule 12(c). FED. R. CIV. P. 12(c); *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012).

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The aim of the doctrine is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* "Res judicata promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011).

Res judicata blocks a second lawsuit if there is (1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action. *Id.* Of the third element, we have said that "two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Hermann v. Cencom Cable Assocs.*, 999 F.2d 223, 226 (7th Cir. 1993); s*ee also Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) ("Whether there is an identity of the cause of action depends on 'whether the claims comprise the same core of operative facts that give rise to a remedy.'" (quoting *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011))); *Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011) (There is res judicata where "allegations in [two lawsuits] are essentially the same.").

There is no dispute here that the first two elements of res judicata are satisfied. Although Barr sued the University in the first suit and the University's Board of Trustees in the second, the nominal difference in the defendants has no significance; everyone agrees there is an identity of parties. And the first suit was dismissed for failure to prosecute, which operates as a merits judgment. *See* FED. R. CIV. P. 41(b) (involuntary dismissal for failure to prosecute "operates as an adjudication on the merits"); *see also Tartt v. Nw. Cmty. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006) (holding that dismissal under Rule 41(b) for failure to prosecute "amounts to a final judgment on the merits for res judicata purposes"). The only dispute is whether there was an identity in the causes of action in the two suits. Barr says there wasn't because each suit rested on different legal theories and factual predicates—as authorized by the separate EEOC right-to-sue notices.

This argument is squarely foreclosed by a long line of our decisions applying preclusion doctrine to block just this kind of claim-splitting in the employment-discrimination context. *See, e.g.*, *Palka*, 662 F.3d at 437–38; *Czarniecki*, 633 F.3d at 549–51; *Hermann*, 999 F.2d at 225. The basic principle underlying these cases is that a plaintiff cannot evade preclusion by "identify[ing] a slightly different cause of action with one element different from those in the first, second, or third lawsuits between the same parties arising from the same events." *Czarniecki*, 633 F.3d at 550. And the requirement to exhaust administrative remedies is no excuse for claim-splitting in this context. We've repeatedly explained that a plaintiff in this situation—that is, a discrimination claimant who is waiting for a right-to-sue letter on new claims that are factually linked to an earlier suit—can easily ask the district court to stay the first case until the EEOC letter arrives. *See, e.g.*, *Palka*, 662 F.3d at 438; *Czarniecki*, 633 F.3d at 550–51.

These principles apply here to preclude Barr's second suit. Yes, the second case is a little different from the first in that it complains about age discrimination and presents a different theory of retaliation. Yes, Barr needed to get her right-to-sue letter before she could bring claims in the second suit. But both suits arise out of the same main event: the University's decision not to retain Barr on its faculty.

Barr insists that the first case was about *harassment*, not termination. But she's stuck with her complaint, which, as we've noted, was indeed based on her termination or "non-renewed" status. True, it mentioned (though failed to attach) her EEOC charge relating to harassment, but the cause of action actually alleged in the complaint stemmed from the

nonrenewal of Barr's faculty appointment. And even if her legal theory changed between the first and second suits, both cases alleged wrongful nonrenewal and thus shared the same core factual basis for res judicata purposes. *See, e.g.,* *Palka*, 662 F.3d at 437 ("[T]here is an identity of the causes of action because the Title VII claims are premised on the Palkas' termination by their respective municipal employ-ers—the same transactions at issue in their § 1983 cases."); *Smith v. City of Chicago*, 820 F.2d 916, 918 (7th Cir. 1987) ("We have regarded as the law of this [c]ircuit that '[e]ven though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action.'" (quoting *Lee v. City of Peoria*, 685 F.2d 196, 200 (7th Cir. 1982))).

Barr argues that because her first suit was dismissed for lack of service, the policies underlying res judicata aren't implicated here. She points out that the use of judicial resources in the first case was "modest" and the University hasn't actually had to defend multiple rounds of litigation. But the rule against claim-splitting applies even if the plain-tiff's first suit was short-lived. *See Palka*, 662 F.3d at 437 (explaining that claim-splitting is "a litigation tactic that res judicata doctrine is meant to prevent").

Finally, Barr reminds us that she filed her first suit with-out the benefit of counsel. But she soon obtained a lawyer, who filed the second suit two months *before* the first suit was dismissed. If, as Barr claims, res judicata is a legal "gotcha game" for unrepresented plaintiffs, the "gotcha" part ended when Barr hired an attorney to pursue her case against the University.

We close by noting that Barr's first suit probably should have been dismissed without prejudice. *See Lowe v. City of East Chicago, Ind.*, 897 F.2d 272, 275 (7th Cir. 1990). But the remedy for that possible error was a motion under Rule 59 of the Federal Rules of Civil Procedure or an appeal. For reasons we don't know, Barr and her attorney pursued neither course and instead plowed ahead with the second lawsuit. So the dismissal of Barr's first suit remains an undisturbed final decision on the merits, and thus res judicata precludes the second case.

AFFIRMED.