**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 21, 2018[*]
Decided November 21, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-2101

| | |
|---|---|
| HYE-YOUNG PARK,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Central District of Illinois |
| *v.* | No. 2:18-cv-02090-CSB-EIL |
| BOARD OF TRUSTEES OF THE<br>UNIVERSITY OF ILLINOIS, et al.,<br>    *Defendants-Appellees.* | Colin S. Bruce,<br>*Judge.* |

**O R D E R**

Hye-Young "Lisa" Park, a former postdoctoral researcher at the University of Illinois at Chicago, complained to school officials that two men sexually harassed her. She sued the Board of Trustees at the University of Illinois, among others, for race and sex discrimination, retaliation, and the denial of due process. The district court

---

[*] The defendants have not been served with process and are not participating in this appeal. We have agreed to decide this case without oral argument because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

dismissed her complaint on res judicata grounds because she had raised identical or nearly identical claims in a prior suit. We affirm on alternative grounds.

Park first brought a federal suit in June 2015 against the Board of Trustees of the University of Illinois and two officials in the university's Office of Diversity, Equity, and Access (ODEA) who had investigated her accusations that two men sexually harassed her. Park asserted that the Board of Trustees discriminated against her based on her sex, *see* Title IX, 20 U.S.C. § 1681, when university officials wrote a report stating that they could not help her and then did nothing; endorsed officials who retaliated against her based on her sex and race when they encouraged a professor to stop sponsoring Park for immigration purposes, *see id.*; 42 U.S.C. § 1981; and denied her due process by promoting policies under which officials could refuse to take action after someone complained about harassment, *see* 42 U.S.C. § 1983. As for the two ODEA officials, Park asserted a similar § 1981 claim of retaliation for their role in encouraging the professor to end her immigration sponsorship, and a similar due-process claim for their role in writing the report in which they said they had no power to stop the harassment and for their decision to take no action.

The district court ruled against her. On the basis of Eleventh Amendment immunity, the court initially granted the defendants' motion to dismiss her § 1983 and § 1981 claims against the Board and her § 1981 retaliation claim against the ODEA officials. Later, in January 2018, the court entered summary judgment on the remaining claims against these defendants: the court found no evidence, first, that any defendant denied Park due process or discriminated against her after she notified the officials of harassment (because she could not point to any instance of harassment after she first complained to the ODEA) and, second, that any defendant had retaliated against her (because there was no evidence of any causal link between her notice to the ODEA and the professor stopping her immigration sponsorship).

Three months later, Park filed this suit against almost the same defendants (she replaced the two ODEA officials with two other university officials who reviewed the ODEA's report). She again alleged that the Board discriminated and retaliated against her based on race and sex when it allowed officials to encourage the professor to stop sponsoring her immigration application, and denied her substantive due process when it endorsed policies that authorized the ODEA to refuse to stop the harassment. This time she added that the Board also violated Title VI and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d–2000d-7, 2000e–2000e-17, when, because of her sex and national origin, the officials who reviewed the ODEA report failed to amend the

report's conclusion or otherwise help her. As for the university officials, she alleged that they denied her substantive due process by turning a blind eye to the misconduct; retaliated against her based on race when they encouraged the professor to stop sponsoring her; and discriminated against her based on sex and national origin by not taking action to remedy the harassment.

The district court dismissed this suit under the doctrine of res judicata. The court determined that the claims in both suits were identical or nearly identical; they were based on the same core of operative facts; and the judgment in the first suit was final. The court acknowledged that two different individuals had been named as defendants in this suit but concluded that the allegations against them were identical to those made against the individual university employees in the prior suit.

On appeal, Park first contends that the district court erroneously applied res judicata to bar this suit because the prerequisites under that doctrine have not been met. Res judicata blocks a second lawsuit if there is (1) an identity of parties or privies in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of claims. *Barr v. Bd. of Trs. of W. Ill. Univ.,* 796 F.3d 837, 840 (7th Cir. 2015). Highlighting the first requirement, Park contends that the parties here are not identical because she has added as defendants the two university officials who reviewed the ODEA report.

We agree with Park that the addition of the two new defendants defeats res judicata, *see Taylor v. Sturgell*, 553 U.S. 880, 893–96 (2008), but her claims are blocked for another reason—the doctrine of collateral estoppel. "Issue preclusion [collateral estoppel] bars successive litigation of an issue of fact or law actually litigated and resolved in a valid determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Dexia Credit Local v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010); *see also Grede v. FCStone, LLC*, 867 F.3d 767, 776 (7th Cir. 2017). Although collateral estoppel is an affirmative defense, a court may raise it sua sponte, as we do here, if it is plainly apparent from the face of the complaint. *Arizona v. California*, 530 U.S. 392, 412 (2000); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

Here, there are precise issues of fact and law that were actually litigated and necessarily decided in the underlying case. Park's Title VI and Title VII claims against the Board are based on the "same, or nearly the same, factual allegations" as undergirded her due-process claim in the first suit. *Barr*, 796 F.3d at 840 (internal quotation marks omitted). Specifically, the Title VI, Title VII, and due process claims are all based on her allegation that the Board was responsible for the university officials' failure to stop the harassment. The district court concluded in the first suit that the

Board was not responsible for the harassment she suffered because Park could not point to any instance of harassment after she complained to the ODEA. Similarly, regarding her allegations here of discrimination based on sex and national origin, the district court determined in the first suit that Park could not identify a single instance of harassment after she complained to the ODEA, so no university defendant could be liable for failing to correct a situation that did not require remedying. Finally, regarding Park's allegations here of retaliation based on race, sex, and national origin, the district court determined in the first suit that there was no causal link between her complaint to the ODEA and her professor ending her immigration sponsorship.

AFFIRMED