2021 IL App (1st) 200508-U

No. 1-20-0508

FIFTH DIVISION
MARCH 31, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | |
|---|---|
| BRANDON HUDSON, | ) Petition for Direct |
| | ) Administrative Review of a |
| Petitioner-Appellant, | ) Decision of the Illinois Human |
| | ) Rights Commission |
| v. | ) |
| | ) Charge No. 2018 CR 3185 |
| THE HUMAN RIGHTS COMMISSION, | ) Charge No. 2018 CR 3186 |
| THE DEPARTMENT OF HUMAN RIGHTS, and | ) |
| COOK COUNTY STATE'S ATTORNEY'S OFFICE, | ) |
| | ) |
| Respondents-Appellees. | ) |

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the orders of the Human Rights Commission sustaining the dismissal of petitioner's charges of employment discrimination.

¶ 2    Petitioner Brandon Hudson appeals from the orders of the Illinois Human Rights

Commission (Commission) sustaining the Illinois Department of Human Rights' (Department)

dismissal of his charges of discrimination against Hudson's former employer, the Cook County

State's Attorney's Office. The Department and Commission found the charges were barred by operation of section 7-109.1 of the Illinois Human Rights Act (775 ILCS 5/7-109.1 (West 2018)), given Hudson's pending federal lawsuit based on the same facts. On appeal, Hudson argues that section 7-109.1 is not implicated, because resolution of his federal lawsuit would not preclude the charges as a matter of *res judicata.* For the following reasons, we affirm the ruling of the Commission.

¶ 3                                    BACKGROUND

¶ 4      Hudson was employed by the Cook County State's Attorney's Office before his termination on December 4, 2017. On June 1, 2018, Hudson filed two substantially identical charges of discrimination with both the Department and the federal Equal Employment Opportunity Commission (EEOC), naming Kimberly Foxx and the Cook County State's Attorney's Office as respondents.[1] In both charges, Hudson alleged discrimination in violation of Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e, *et seq*.) and the Illinois Human Rights Act (the Act) (775 ILCS 5/1 *et seq*. (West 2018)). Specifically, he alleged that he was subjected to unequal terms and conditions of employment based on his race and sex, as an African-American male, and that he was retaliated against when he engaged in protected activity to oppose that discrimination.

¶ 5      Separately, on December 17, 2018, Hudson filed a lawsuit in the United States District Court for the Northern District of Illinois naming Kimberly Foxx, Cook County, and the State's

---

[1] One of the charges was labeled with IDHR charge number 2018 CR 3185 and EEOC charge number 440-2018-05719. The second charge was labeled with IDHR charge number 2018 CR 3186 and EEOC charge number 440-2018-5720. The record reflects that on September 28, 2018, the EEOC issued a determination indicating that the EEOC was terminating its processing of the charges.

Attorney's Office as defendants. *Hudson v. Foxx*, No. 1:18-cv-08243 (N.D. Ill.). The complaint in the federal lawsuit contained counts of gender discrimination, racial discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et seq.*) ("Title VII").[2] In the federal complaint, Hudson alleged that shortly after beginning his employment as an Assistant State's Attorney in June 2015, he was the target of verbal harassment and disparate treatment until his eventual termination on December 4, 2017. In the federal complaint's prayer for relief, Hudson sought, *inter alia,* compensatory and punitive damages.

¶ 6     On August 16, 2019, the Department entered orders of administrative dismissal for both charges, pursuant to section 7-109.1 of the Act. 775 ILCS 5/7-109.1. In those orders, the Department notified Hudson that the charges were being dismissed because he had "initiated litigation for the purpose of seeking final relief in a State or federal court" and "[a] final decision on the merits in that litigation or administrative hearing would preclude the charging party from bringing another action based on the charge."

¶ 7     On October 11, 2019, Hudson filed with the Commission, a request for review of the Department's orders of dismissal. In submissions accompanying that request, Hudson averred that administrative dismissal under section 7-109.1 of the Act was "premature as the federal court [has] not made any substantive findings." He asserted that the charges should not be dismissed "unless

---

[2]Although the complaint initiating Hudson's federal lawsuit is not contained in the record on appeal, we may take judicial notice of filings in other courts that are matters of public record. See *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37 (an appellate court may take judicial notice of "readily verifiable facts" if doing so will aid in the efficient disposition of a case, and "a reviewing court may take judicial notice of a written decision that is part of the record of another court"); *Metropolitan Life Ins. Co. v. American Nat. Bank and Trust Co.*, 288 Ill. App. 3d 760, 764 (1997) ("This court may take judicial notice of public documents that are included in the records of other courts. [Citation.]"). The docket in the federal lawsuit reflects that, as of March 9, 2021, the lawsuit remains pending while the court considers a motion to dismiss filed by certain defendants.

and until the federal court makes a final decision on the merits and determines whether or not the federal court will retain jurisdiction of [his] state law claims."

¶ 8    On November 19, 2019, the Department filed a response to Hudson's request for review, urging that administrative dismissal pursuant to section 7-109.1 of the Act was proper, as a final decision on the merits in Hudson's federal court lawsuit "would preclude [Hudson] from bringing another action based on the pending charge."

¶ 9    On February 11, 2020, the Commission entered two substantively identical final orders sustaining the dismissal of Hudson's charges pursuant to section 7-109.1 of the Act. In those orders, the Commission reasoned that the language of that section was "mandatory" and thus the Department "does not have the discretion to allow a charge to proceed once it has been presented with evidence that Petitioner has filed a complaint 'seeking final relief on some or all of the issues that are the basis of the charge.' "

¶ 10    The Commission rejected Hudson's argument that administrative dismissal was premature because there has not been any fact-finding or decision on the merits in the federal lawsuit. The Commission explained:

> "[T]the only requirement for a dismissal under [section 7-109.1] is that 'the complainant has initiated litigation in a federal or State court for the purpose of seeking final relief on some or all of the issues that are the basis of the charge.' Because [Hudson] does not dispute that the federal litigation seeks final relief on some or all of the issues that are the basis of his charge, the Commission cannot vacate the Respondent's dismissal of the charge."

¶ 11    The Commission thus sustained the Department's dismissal of both charges. The Commission notified Hudson that he could appeal to this court by filing a petition for review within 35 days of service of the orders. See Ill. S. Ct. R. 335(a) (eff. July 1, 2017).

¶ 12    The record reflects that the Commission's orders were served by mail on February 11, 2020. Service of the orders was thus complete four days later, February 15, 2020. See 56 Ill. Adm. Code 5300.20 (eff. June 1, 1992) ("Whenever a time period commences upon a Person's receipt of service or notice, and service is by mail, receipt shall be deemed to occur on the fourth day after mailing."). Hudson's petition for review was filed with our court within 35 days, on March 17, 2020, and was thus timely.[3] See 775 ILCS 5/8-111(B)(1) (West 2018) (A petitioner may seek "judicial review of a final order of the Commission * * * by filing a petition for review" directly with the Appellate Court within 35 days of service of the decision). We review the final order of the Commission, not the Department's decision. See *Zaderaka v. Human Rights Comm'n*, 131 Ill. 2d 172, 179 (1989); *Marinelli v. Human Rights Comm'n*, 262 Ill. App. 3d 247, 253 (1994) ("It is the decision of the Commission, not the Department, which we review.").

¶ 13                                ANALYSIS

¶ 14    On appeal, Hudson contends that both charges were erroneously dismissed because section 7-109.1 of the Act is inapplicable.[4] He acknowledges that, in addition to filing charges with the

---

[3] Hudson's petition for review specified that he sought review of the Commission's orders sustaining the dismissal of both charges, 2018 CR 3185 and 2018 CR 3186.

[4] Notably, although Hudson's petition for review and the captions to his briefs refer to both charges with the Department (2018 CR 3185 and 2018 CR 3186), the argument in his briefing refers to only a single "charge." This apparent oversight does not impact our review, as both charges were dismissed for the same reason, *i.e.*, application of section 7-109.1 of the Act, and the substance of Hudson's argument applies equally to both charges.

Department, he initiated litigation in federal court seeking relief under Title VII, and that the federal lawsuit was based on the same factual allegations as his charges with the Department. However, he suggests that a final decision on the merits of his federal lawsuit could *not* preclude him "from bringing another action on his pending Charge[s] in state court." He asserts that "even if the federal district court were to have adjudicated [his] federal discrimination claim under Title VII * * * any such judgment would have had absolutely no impact upon [his] State law claims under the Illinois Human Rights Act." He maintains that, regardless of the outcome of his federal lawsuit, "he still could have filed a State court lawsuit alleging discrimination under State law (the Illinois Human Right Act), even though both cases arose out of the exact same set of underlying facts." He requests that we vacate the Commission's orders and remand to allow him "to ultimately bring his State law claims under the Illinois Human Rights Act in State Court."

¶ 15    At the outset, we note that the parties dispute the standard of review to be applied to the Commission's orders sustaining the Department's dismissal of Hudson's charges. Hudson asserts that the issue on appeal is one of statutory construction, such that our review is *de novo*. On the other hand, the Department and Commission (respondents) urge that a deferential standard of review applies, and that we may reverse only if the Commission's decision was "clearly erroneous."

¶ 16    The standard of review applied to an administrative agency's decision "turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact." *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005) (citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001)). An agency's conclusion on a question of law is reviewed *de novo*. *Id.* An

agency's decision on a question of fact is entitled to more deference and is reviewed for whether it is against the manifest weight of the evidence. *Id.* at 471-72.

¶ 17    "A mixed question of law and fact asks the legal effect of a given set of facts. [Citation.] That is, in resolving a mixed question of law and fact, a reviewing court must determine whether established facts satisfy applicable legal rules. [Citation.]" *Id.* at 472. "An agency's conclusion on a mixed question of law and fact is reviewed for clear error," which is "deferential to an agency's experience in construing and applying the statute that it administers." *Id.* An agency's decision will be deemed clearly erroneous only where the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.*

¶ 18    The sole question in this appeal is whether, in light of Hudson's federal court lawsuit, dismissal of his charges was warranted under section 7-109.1 of the Act. We are not called upon to review any factual determination. Rather, in deciding whether the charges were properly dismissed under section 7-109.1, we determine whether established facts (the charges and federal lawsuit) satisfy applicable legal rules. We thus agree with the respondents that this case presents a question of mixed law and fact, and so the "clearly erroneous" standard of review applies. For the following reasons, we determine that Commission's orders sustaining the dismissal of Hudson's charges were not clearly erroneous.[5]

¶ 19    At the time that Hudson's charges were dismissed by the Department and sustained by the Commission, section 7-109.1 of the Illinois Human Rights Act provided:

> "For charges filed under this Act, if the charging party has initiated litigation for
> the purpose of seeking final relief in a State or federal court or before an

---

[5] We also note that, even if we were to apply non-deferential *de novo* review, we would reach the same result.

administrative law judge or hearing officer * * * , and if a final decision on the merits in that litigation or administrative hearing would preclude the charging party from bringing another action based on the pending charge, the Department shall cease its investigation and dismiss the pending charge by order of the Director, who shall provide the charging party notice of his or her right to commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction. The Director shall also provide the charging party notice of his or her right to seek review of the dismissal order before the Commission. Any review by the Commission of the dismissal shall be limited to the question of whether the charge was properly dismissed pursuant to this Section. Nothing in this Section shall preclude the Department from continuing to investigate an allegation in a charge that is unique to this Act or otherwise could not have been included in the litigation or administrative proceeding." 775 ILCS 5/7-109.1 (West 2018).[6]

¶ 20     Respondents argue that Hudson's charges were properly dismissed pursuant to section 7-109.1 of the Act, insofar as a final decision on the merits in Hudson's federal lawsuit would preclude him from pursuing the charges, which were premised on the same facts. Specifically, respondents maintain that, as a matter *res judicata*, a final determination on the merits in the federal case would preclude the discrimination charges. We agree.

_____

[6] Effective January 1, 2020, section 7-109.1 was amended to provide that: (1) for charges filed under Article 7A of the Act, "if the complainant has initiated litigation in a federal or State court for the purpose of seeking final relief on some or all of the issues that are the basis of the charge" either party may request that the Department administratively dismiss the charge. 775 ILCS 5/7-109.1 (West 2020). Since this appeal turns on the propriety of the Department's August 2019 administrative dismissal of the charges, we apply the version of the statute in effect at that time. See *People v. Frederick*, 2015 IL App (2d) 140540, ¶ 23 ("Ordinarily, the law to be applied is the law that is in effect at the time of the administrative action at issue. (citing *Goral v. Illinois State Board of Education*, 2013 IL App (1st) 130752, ¶ 27)).

¶ 21   "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. [Citation.] *Res judicata* bars not only what was actually decided in the first action but also whatever could have been decided. [Citation.]" *Hudson v. City of Chicago,* 228 Ill. 2d 462, 467 (2008). Application of the doctrine has three requirements: "(1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions. [Citation.]" *Id.*

¶ 22   We recognize that, when this court is asked to review whether a federal court action has *res judicata* effect, we apply federal law regarding the doctrine. See *Peregrine Financial Group, Inc. v. TradeMaven, L.L.C.*, 391 Ill. App. 3d 309, 313 (2009) ("The parties agree that * * * federal law governs the *res judicata* issue because the litigation with Trading Technologies was filed and settled in federal court. [Citation.]"). In any event, the elements of *res judicata* under federal law are identical to Illinois law. See *id.* ("As with Illinois law, under federal law there are three requirements for *res judicata*: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits."); see also *Barr v. Board of Trustees of Western Illinois University*, 796 F.3d 837, 840 (7th Cir. 2015) ("Res judicata blocks a second lawsuit if there is (1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action. [Citation.]")

¶ 23   We note that, in this case, there is no dispute that there is a common identity of the parties in the federal litigation and the charges filed with the Department. Hudson's federal lawsuit named Kimberly Foxx, Cook County, and the Cook County State's Attorney's Office as defendants. The same three parties were named as respondents in both charges, 2018 CR 3185 and 3186.

¶ 24     As the parties were identical, the elements of *res judicata* will be satisfied if (1) there is a final judgment on the merits and (2) an identity of the causes of action. We agree with respondents that there is an identity of the causes of action in Hudson's federal lawsuit and the charges filed with the Department.

¶ 25     Under both federal and Illinois law, whether the causes of action are identical turns upon whether there is a common factual basis. Federal precedent recognizes that " 'two claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations'" *Barr*, 796 F.3d at 840; see also *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) ("Whether there is an identity of the cause of action depends on 'whether the claims comprise the same core of operative facts that give rise to a remedy.'"). The same is true under Illinois law. See *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998) ("separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief. [Citation.]").

¶ 26     Here, it is apparent from Hudson's filings that his federal lawsuit and his administrative charges stem from the same alleged acts of gender and racial discrimination during his employment with the Cook County State's Attorney's Office.  On appeal, Hudson does not dispute that they are based on the same core of operative facts.

¶ 27     Nonetheless, Hudson suggests that resolution of claim in his federal lawsuit could not preclude his administrative charges because in federal court he asserted claims under Title VII of the Civil Rights Act, whereas his administrative charges were brought under the Human Rights Act. He asserts that regardless of the outcome of his federal lawsuit, "he still could have filed a State court lawsuit alleging discrimination under State law (the Illinois Human Rights Act) even though both cases arose out of the exact same set of underlying facts." In essence, he suggests that

his federal lawsuit could not have a preclusive effect as *res judicata*, because he sought relief under different statutes before the federal court and the Department. However, that argument is flawed, because whether there is an identity of the causes of action depends on whether there is a common underlying factual basis, regardless of the theory of recovery. See *Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008) (explaining that identity of the cause of action "is determined by using the operative facts or same transaction test" and that *res judicata* prevents a party from using "several theories of recovery as the basis for separate suits." (Internal quotation marks omitted.)); see also *Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011) ("The federal-court complaint seeks recovery based on additional theories not mentioned in the state-court complaint, but res judicata is nonetheless appropriate because * * * both complaints rely on the same operative facts."); *River Park, Inc.*, 184 Ill. 2d at 310 ("separate claims will be considered the same cause of action * * * if they arise from a single group of operative facts regardless of whether they assert different theories of relief. [Citation.]").

¶ 28     It is apparent from Hudson's filings, and he does not dispute, that the same core of operative facts forms the basis for his Title VII claims in his federal lawsuit and the charges filed with the Department under the Act. Indeed, Hudson's reply brief concedes that his state law charges "are based upon the very same set of facts alleged in support of his Title VII claims." Nonetheless, he maintains that his federal lawsuit cannot have a preclusive *res judicata* effect to bar his state law claims.

¶ 29     In support of this argument, Hudson directs our attention to case law to suggest that Title VII claims are not subject to *res judicata,* but we find that precedent is inapposite. None of those cases convinces us that a judgment in Hudson's federal Title VII action would not have a *res judicata* effect on his state law claims, based on the same facts.

¶ 30    First, Hudson relies heavily on this court's decision in *City of Chicago v. Illinois Fair Employment Practices Commission*, 87 Ill. App. 3d 597 (1980). However, as explained below, that case relies on precedent that was undermined by a subsequent United States Supreme Court decision.

¶ 31    *City of Chicago* concerned an appeal by the City of Chicago (City) from a state court judgment affirming a decision of the Illinois Fair Employment Practices Commission (FEPC), which found that the City had discriminated against the complainant and other female custodial employees, in violation of state law. *Id*. at 597. The complainant was also a member of a federal class action lawsuit alleging violations of Title VII and other federal statutes, on the same factual basis. While the FEPC administrative proceedings were pending, a decision was entered in the federal district court in favor of the class members, which was affirmed by the Seventh Circuit Court of Appeals. *Id.* at 600, 603.

¶ 32    Before this court, the City argued that, in light of the award in the federal lawsuit, *res judicata* applied to bar the state court litigation. *Id.* at 602-03. This court concluded that the FEPC award was not barred by *res judicata*. In so doing, this court relied upon the Seventh Circuit's decision in *Batiste v. Furnco Construction Corp.*, 503 F.2d 447 (7th Cir. 1974), which held that *res judicata* did not bar plaintiffs' federal court lawsuit alleging violation of Title VII, notwithstanding that plaintiffs had already prevailed before the Illinois FEPC on a similar discrimination claim. We noted that the Seventh Circuit in *Batiste* recognized a " 'strong Congressional policy that plaintiffs not be deprived of their right to resort to the federal courts for adjudication of their federal claims under Title VII.' " *City of Chicago*, 87 Ill. App. 3d at 603 (quoting *Batiste*, 503 F.2d at 450).

¶ 33    Our court's decision in *City of Chicago* also relied upon the United States Supreme Court's decision in *Alexander v. Gardner-Denver Company*, 415 U.S. 36 (1974). *Alexander* held that an employee was not precluded from suing his employer in federal court under Title VII, notwithstanding that the employee had been unsuccessful in pursuing a discrimination claim in arbitration pursuant to a collective bargaining agreement.  In holding that the employee's federal lawsuit was not precluded by the adverse arbitral decision, the *Alexander* court explained:

> "Title VII provides for consideration of employment-discrimination claims in several forums. [Citations.] And, in general, submission of a claim to one forum does not preclude a later submission to another. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination." *Alexander*, 415 U.S. at 48-49.

Our court in *City of Chicago* quoted the above language from *Alexander* and concluded that the state law FEPC proceeding was not barred by the federal class action award: "It is clear the defense of *res judicata* is inapplicable in this state proceeding as it was in the federal proceeding in *Batiste* and in *Alexander*." 87 Ill. App. 3d at 604.

¶ 34    In his briefs before this court, Hudson suggests that *City of Chicago* (as well as *Batiste* and *Alexander*), establish that *res judicata* cannot apply where one of the two proceedings involves Title VII claims, even if both proceedings are based on the same facts. That is, he suggests that a final decision in his federal court Title VII lawsuit could not "preclude" his state law charges within the meaning of section 7-109.1 of the Act.

¶ 35   We agree with respondents that the *City of Chicago* decision is not controlling. *City of Chicago* relied on *Batiste* and *Alexander*, which were superseded by the U.S. Supreme Court's subsequent decision in *Kremer v. Chemical Constr. Corp*, 456 U.S. 461 (1982), which applied *res judicata* from a state court judgment to bar a federal Title VII action.

¶ 36   In *Kremer*, the petitioner (Kremer) filed an employment discrimination charge with the EEOC, which was referred to the New York State Division of Human Rights. *Id.* at 464-65. That agency found no probable cause to support Kremer's claim, and that determination was upheld by the agency's Appeal Board. *Id.* at 464. The Appellate Division of the New York Supreme Court affirmed the Appeal Board's order. *Id*. Kremer then brought a Title VII action against his former employer in federal district court, which was dismissed on the ground of *res judicata*; that dismissal was affirmed by the Second Circuit Court of Appeals. *Id.* at 466.

¶ 37   The U.S. Supreme Court viewed the *res judicata* question in light of section 1738 of the United States Code (28 U.S.C. § 1738,) which requires federal courts to "afford the same full faith and credit to state court judgments that would apply in the State's own courts. [Citation.]" *Kremer*, 456 U.S. at 462-63. The Supreme Court framed the question as:

> "whether Congress intended Title VII to supersede the principles of comity and repose embodied in § 1738. Specifically, we decide whether a federal court in a Title VII case should give preclusive effect to a decision of a state court upholding a state administrative agency's rejection of an employment discrimination claim as meritless when the state court's decision would be res judicata in the State's own courts." *Id*. at 463.

¶ 38   The Supreme Court in *Kremer* determined that Title VII lawsuits are subject to section 1738's directive that prior state court judgments are entitled to a preclusive effect. Significantly,

- 14 -

*Kremer* expressly distinguished *Alexander* in the course of holding that the adverse New York state court decision precluded the federal Title VII action:

> "The petitioner and the Courts of Appeal which have denied res judicata effect to such [prior state court judgments] rely heavily on our statement in *Alexander v. Gardner-Denver*, that 'final responsibility for enforcement of Title VII is vested with federal courts.' 415 U.S. at 44. We did not say, and our language should not be read to imply, that by vesting 'final responsibility' in one forum, Congress intended to deny finality to decisions in another." *Kremer,* 456 U.S. at 477.

The *Kremer* court also emphasized that *Alexander* concerned whether to give preclusive effect to an arbitration decision, rather than a state court judgment:

> "The holding in [*Alexander*] was that a private arbitration decision concerning an employment discrimination claim did not bind the federal courts. Arbitration decisions, of course, are not subject to the mandate of §1738. Furthermore, unlike arbitration hearings * * * state fair employment practice laws are explicitly made part of the Title VII enforcement scheme. * * * Here we are dealing with a state statutory right, subject to state enforcement in a manner expressly provided for by the federal Act.

> [*Alexander*] also rested on the inappropriateness of arbitration as a forum for the resolution of Title VII issues. The arbitrator's task, we recognized, is to 'effectuate the intent of the parties rather than the requirements of enacted legislation.' *Id.* at 56-57. * * * These characteristics cannot be attributed to state administrative boards and state courts." *Kremer*, 456 U.S. at 477-78.

¶ 39    The United States Supreme Court in *Kremer* affirmed the dismissal of petitioner's federal Title VII lawsuit, upon concluding there was no showing of a "legislative purpose in Title VII to deny res judicata or collateral estoppel effect to a state court judgment affirming that a claim of employment discrimination is unproved." *Id*. at 485.

¶ 40    *Kremer* makes clear that a Title VII lawsuit is not immune from *res judicata* effect of a prior state court judgment. We agree with the respondents that, in light of *Kremer*, Hudson cannot rely on our prior decision in *City of Chicago*, which in turn relied on *Batiste* and *Alexander*. The Seventh Circuit's 1974 *Batiste* decision—declining to apply a *res judicata* effect to a prior state court adjudication to preclude a federal Title VII lawsuit—is clearly at odds with the U.S. Supreme Court's subsequent decision in *Kremer*. Further, as discussed, *Alexander* was explicitly distinguished in *Kremer*.

¶ 41    We similarly reject Hudson's reliance in his reply brief on *Batiste* and *Alexander* for the proposition that "Title VII provides for consideration of employment-discrimination claims in several forums and submission of a claim to one forum does not preclude a later submission to another." That suggestion is clearly rejected by *Kremer*. In short, *Kremer* squarely undermines Hudson's reliance on *City of Chicago, Batiste*, and *Alexander*.

¶ 42    In disputing the *res judicata* effect of a federal Title VII lawsuit on his state law claims, Hudson also cites the principle that "state and federal courts generally possess concurrent jurisdiction over federal civil rights claims." *Zoepfel-Thuline v. Black Hawk College*, 2019 IL App (3d) 180524, ¶ 26 (citing *Blount v. Stroud*, 232 Ill. 2d 302, 328-30 (2009)). However, that principle has no bearing on our *res judicata* analysis. It merely recognizes that a plaintiff may elect to pursue federal discrimination claims in *either* state court or federal court. See *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820 (1990) (holding that state courts have concurrent jurisdiction over Title

VII actions); *Zoepfel-Thuline*, 2019 IL App (3d) 180524, ¶ 26 (recognizing that Illinois courts deciding federal statutory claims will follow Seventh Circuit precedent because the "failure to do so would detract from uniform application of a federal statute, depending on whether the case was filed in federal or state court."). That is entirely different from suggesting that a plaintiff may simultaneously bring discrimination claims, based on the same operative facts, in different forums.

¶ 43    We thus reject Hudson's arguments that resolution of his federal Title VII lawsuit could not have a preclusive *res judicata* effect with respect to his state law charges. Rather, all three elements of *res judicata* will be satisfied if there is a final judgment on his federal lawsuit: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *Peregrine Financial Group*, 391 Ill. App. 3d at 313.

¶ 44    In turn, by operation of *res judicata*, a "final decision on the merits" in the federal lawsuit "would preclude the charging party [Hudson] from bringing another action based on the pending charge[s]" within the meaning of section 7-109.1 of the Act. 775 ILCS 5/7-109.1 (2018).

¶ 45    Accordingly, we do not find that the Commission erred, let alone committed clear error, in sustaining the Department's dismissal of Hudson's charges.

¶ 46                                CONCLUSION

¶ 47    For the foregoing reasons, we affirm the decision of the Commission.

¶ 48    Affirmed.